UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO: 5:17-CV-00154-BR

| | |
|---|---|
| THE UNITED STATES OF AMERICA for the use and benefit of NETPLANNER SYSTEMS, INC., | |
| Plaintiff, | |
| v. | ORDER |
| GSC CONSTRUCTION, INC., and LIBERTY MUTUAL INSURANCE COMPANY, | |
| Defendants. | |

This matter is before the court on the 11 January 2017 motion for summary judgment filed by plaintiff the United States of America for the use and benefit of NetPlanner Systems, Inc., ("NetPlanner"). (DE # 13.) Defendants GSC Construction, Inc. ("GSC") and Liberty Mutual Insurance Company ("Liberty") filed a response in opposition on 16 February 2017, (DE # 27), to which NetPlanner replied on 27 February 2017, (DE # 29). The motion has been fully briefed and is ripe for disposition.

## I. BACKGROUND

This case involves a contractual dispute arising out of a government construction project for the United States Army Corps of Engineers (the "Corps"). GSC was retained as a general contractor by the Corps to construct the SOF Communications Training Facility at Fort Bragg, North Carolina (the "Fort Bragg Project"). (Roberts Aff., DE # 13-3, ¶¶ 6, 14.) As required by the Miller Act, 40 U.S.C. §§ 3131-34, GSC obtained performance and payment bonds for the project from Liberty. (See Ex. 10, DE # 13-12.) On 16 November 2012, GSC entered into a subcontract with NetPlanner to provide cabling and wiring services and materials on the Fort

Bragg Project. (Roberts Aff., DE # 13-3, ¶¶ 7, 14). The subcontract set NetPlanner's compensation at $296,074, subject to additions and deletions provided for under the subcontract. (See Ex. 5, DE # 13-7.)

In addition to setting forth payment obligations, the subcontract set forth a time requirement for when the work was to be substantially completed. Specifically, Article 9 of the subcontract, which is entitled "Date of Commencement and Substantial Completion," states in pertinent part:

> 9.3 The Work of this Subcontract shall be substantially completed not later than
> **Per Owner's approved schedule**
>
> subject to adjustments of this Subcontract Time as provided in the Subcontract Documents.
>
> 9.4 With respect to the obligations of both the Contractor and the Subcontractor, time is of the essence of this Subcontract. *The approved project schedule is available on site. Subcontractor is responsible for reviewing this schedule periodically.
>
> 9.5 No extension of time will be valid without the Contractor's written consent after claim made by the Subcontractor in accordance with Paragraph 5.3.

(Ex. 5, DE # 13-7, at 9.) With respect to claims made by the subcontractor, Paragraph 5.3 states:

> The Subcontractor shall make all claims promptly to the Contractor for additional costs and extensions of time or other causes in accordance with the Subcontract Documents. A claim which will affect or become part of a claim which the Contractor is required to make under the Prime Contract within a specified time period or in a specified manner shall be made in sufficient time to permit the Contractor to satisfy the requirements of the Prime Contract. Such claims shall be received by the Contractor not less than two working days preceding the time by which the Contractor's claim must be made. Failure of the Subcontractor to make such a timely claim shall bind the Subcontractor to the same consequences as those to which the Contractor is bound.

(Id. at 7.)

NetPlanner began work on the Fort Bragg Project in or around the first quarter of 2014, and completed its contractual scope of work in or around May 2015. (Roberts Aff., DE # 13-3, ¶ 15.) During the course of performance, GSC submitted two change orders for additional work in the amount of $4,044.28. (Id. ¶¶ 16-17; see also Ex. 7, DE # 13-9.) This increased the total price of the subcontract to $300,118.28. (Roberts Aff., DE # 13-3, ¶ 17.) GSC paid NetPlanner a total amount of $259,391.33 for work performed on the Fort Bragg Project. (Id. ¶ 18.) NetPlanner contends that it is still owed $40,719.95 for its work on the project. (Id. ¶¶ 22-23.)

On 20 April 2016, NetPlanner filed a complaint in the Middle District of Georgia alleging a Miller Act violation against both defendants, along with state-law claims for breach of contract and *quantum meruit* against GSC. (DE # 1.) In the complaint, NetPlanner seeks to recover payments due under the subcontract for its work on the Fort Bragg Project, as well as a separate subcontract for a construction project in Fort Benning, Georgia (the "Fort Benning Project"). The Middle District of Georgia subsequently determined venue was not proper there for the claims arising from the Fort Bragg Project, and ordered those claims transferred to this district. See NetPlanner Systems, Inc. v. GSC Construction, Inc., No. 4:16-CV-150 (CDL), DE # 30 (M.D. GA. April 3, 2017).

## II. ANALYSIS

In its motion for summary judgment, NetPlanner asks this court to enter judgment against defendants, jointly and severally, in the amount of $40,719.95, plus interest, and attorneys' fees. (Pl.'s Supp. Mem., DE # 13-2, at 10.) NetPlanner also requests that the court disregard the affidavit of GSC's in-house counsel Kasey Bryan, (DE # 27-2), which was submitted by defendants in response to the motion for summary judgment. (Pl.'s Reply, DE # 29, at 3-4.)

**A. Request to Strike**

The court first considers NetPlanner's request to strike because Bryan's affidavit is the only evidence submitted by defendants in response to the motion for summary judgment. NetPlanner asks that the court strike the entirety of Bryan's affidavit on the ground that Bryan does not have personal knowledge of the facts as required under Federal Rule of Civil Procedure 56(c)(4). (Pl.'s Reply, DE # 29, at 4-5.) Additionally, NetPlanner challenges certain portions of the affidavit as containing inadmissible evidence. (Id. at 5-7.)

Rule 56(c)(4) states the criteria for affidavits and declarations to be used in regards to a motion. The terms set by Rule 56(c)(4) are that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Therefore, an affidavit filed in opposition to a motion for summary judgment "cannot be conclusory, . . . or based upon hearsay." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citations omitted). Affidavits, or portions of affidavits, may be struck when in violation of these requirements. See id. (upholding the district court's decision to strike portions of an affidavit deemed inadmissible or improper).

Here, Bryan's affidavit states that it is based on her personal knowledge as in-house counsel, who personally reviewed GSC's files regarding the scope of and schedule of NetPlanner's work on the Fort Bragg Project. (Bryan Aff., DE # 26-1, ¶ 4.) NetPlanner contends that the court should not consider the affidavit because Bryan's review of GSC's files did not give her "personal knowledge" of the facts. (Pl.'s Reply, DE # 29, at 4.) However, personal knowledge is not strictly limited to activities in which the affiant has personally participated. See Londrigan v. FBI, 670 F.2d 1164, 1174-75 (D.C. Cir. 1981) (noting that FBI

agent who reviewed file had personal knowledge sufficient to support statements about the conduct of an investigation in which he had not participated); Danone Asia Pte. v. Happy Dragon Wholesale, Inc., No. CV-05-1611, 2006 WL 845573, at *4 n.3 (E.D.N.Y Mar. 29, 2006) (finding that the affidavit of a witness who was general counsel of a parent company, as opposed to a litigating attorney in the action, was admissible because he was an officer of the company and made statements based upon his "personal knowledge and from review of the company's records, both of which are admissible"). An "affiant's personal knowledge may be based on review of files, if the testimony states facts reflected by the files and does not give inferences, opinions, and surmises." Howard Acquisitions, LLC v. Giannasca New Orleans, LLC, No. WDQ-09-2651, 2010 WL 3834917, at *3 (D. Md. Sept. 28, 2010) (citations and internal quotation marks omitted); see also Sutton v. Roth LLC, 361 F. App'x 543, 550 n.7 (4th Cir. 2010) (noting that an affidavit is of "questionable value" when the affiant's knowledge is based on a review of files and the affiant gives legal conclusions). The contents of Bryan's affidavit do not offer any opinions or legal conclusions. Therefore, as a result of her review of the records and position with GSC, the court finds that Bryan had personal knowledge of the relevant facts as required by Rule 56(c)(4).

NetPlanner further challenges Paragraphs 7-9 of Bryan's affidavit as setting forth facts which would not be admissible. NetPlanner asserts that Paragraph 7, which addresses the actual and expected duration of work performed by NetPlanner on both projects, lacks foundation and disregards the best evidence rule because it is not supported by attached documents. (Pl.'s Reply, DE # 29, at 5-6.) Paragraph 7 states "The Government-approved schedules for the projects show that the duration of Netplanner's activities extended beyond the original expected

duration," and provides the following table summarizing the periods of delay on the Fort Bragg Project:

| Netplanner Activity | Original Duration | Actual Duration |
|---|---|---|
| Comm Rough In | 20 days | 336 days |
| Comm Devices | 15 days | 91 days |
| Pull Comm Wire | 15 days | 121 days |

(Bryan Aff., DE # 27-2, ¶ 7.)

NetPlanner argues that information contained in Paragraph 7 is inadmissible because the "Government-approved schedules" were not attached to the affidavit. (Pl.'s Reply, DE # 29, at 5.) However, "[t]here is no requirement that all statements made on personal knowledge be supported by independent documentation" when the affiant "states, under penalty of perjury, that [her] declaration is based on personal knowledge of the contents of the file." Washington Cent. R. Co., Inc. v. Nat'l Mediation Bd., 830 F. Supp. 1343, 1355 (E.D. Wash 1993). Because Bryan's statements in Paragraph 7 concerning the expected and actual duration of work performed by NetPlanner come from her review of the content of GSC's files, this paragraph will not be stricken and the court will consider it in ruling on NetPlanner's motion for summary judgment.

The court need not consider NetPlanner's request to strike Paragraphs 8 and 9 because, even if these paragraphs were stricken from Bryan's affidavit, the remaining paragraphs of the affidavit provide sufficient evidence to create a question of fact precluding summary judgment.

**B. Motion for Summary Judgment**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The nonmoving party may not rest on the allegations or denials in its complaint or other pleadings, but must come forward with affidavits or other verified evidence showing that there is a genuine issue for trial. Celotex, 477 U.S. at 322; see also Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). In determining whether an issue of fact exists, the court must view the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).

1.  **Breach of Contract Claim**

To succeed on a breach of contract claim under North Carolina law, a plaintiff must prove: (1) the existence of a valid contract, and (2) a breach of the terms of the contract. Poor v. Hill, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000). In this case, the evidence clearly shows the existence of valid contract between the parties: the subcontract and change orders submitted by NetPlanner indicate that GSC agreed to pay NetPlanner $300,118.28 for labor, materials, equipment, and services in connection with the Fort Bragg Project. (See Ex. 5, DE # 13-7; Ex. 6, DE # 13-8.) There is no dispute that GSC has in fact paid NetPlanner only $259,391.33 for work performed on the Fort Bragg Project. The question at issue here is whether GSC breached the terms of the subcontract by refusing to pay NetPlanner the remaining balance of $40,719.95 due under the subcontract.

Pursuant to the terms of the subcontract, GSC agreed that "[f]inal payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the

7

requirements of the Contract Documents, . . ." (See Ex. 5, DE # 13-7, at 12.) Article 9 of the subcontract specifically references the time frame for completion of the Fort Bragg Project, stating "[t]he Work of this Subcontract shall be substantially completed not later than **Per Owner's approved schedule**." (See id. at 9.) Relying on this provision, GSC contends that it has a valid defense to non-payment because NetPlanner materially breached the subcontract by failing to complete its work within the scope of the subcontract's time for substantial completion and final payment.

GSC has proffered evidence, through Bryan's affidavit, that NetPlanner did not complete its work on the Fort Bragg Project within the government-approved schedule. For example, NetPlanner's work on the "Comm Rough In" was not completed until 316 days after the government-approved date. (Bryan Aff., DE # 27-2, ¶ 7.) NetPlanner was also 106 days behind schedule in completing the Pull Comm Wire. (Id.) While NetPlanner may dispute the length of the delays, NetPlanner does not dispute that its work on the project took longer than expected. Moreover, there is no evidence that NetPlanner requested an extension of time for its work, or that GSC issued written consent for an extension. Therefore, a genuine factual dispute exists as to whether NetPlanner substantially completed the work under the subcontract in a timely manner. Accordingly, summary judgment will be denied on NetPlanner's breach of contract claim against GSC.

   **2.   *Quantum Meruit* Claim**

NetPlanner's motion for summary judgment does not specifically address its alternative state-law claim for *quantum meruit*, rather plaintiff argues that GSC "failed to pay it what it is owed for its work." (Pl.'s Supp. Mem., DE # 13-2, at 2.) "*Quantum meruit* serves as an equitable remedy to prevent unjust enrichment when there is no express contract." Neighbors

Law Firm, P.C. v. Highland Capital Mgmt., L.P., No. 5:09-CV-352-F, 2010 WL 3767126, at *4 (E.D.N.C. Sept. 24, 2010) (citing Whitfield v. Gilchrist, 497 S.E.2d 412, 414-15 (N.C. 1998)). When there is an actual agreement between the parties, *quantum meruit* is not an appropriate remedy "because an express contract precludes an implied contract with reference to the same matter." Ron Medlin Const. v. Harris, 704 S.E.2d 486, 489 (N.C. 2010) (internal quotation marks and citation omitted). The facts here establish the existence of an express contract between the parties regarding the work to be performed on the Fort Bragg Project. (See Ex. 5, DE # 13-7, at 2.) Consequently, NetPlanner cannot recover on a theory of unjust enrichment for services rendered under its subcontract with GSC. See TSC Research, LLC v. Bayer Chems. Corp., 552 F. Supp. 2d 534, 540 (M.D.N.C. 2008) (noting that a *quantum meruit* claim can only prevail "in the absence of an enforceable, express contract").

   3. **Miller Act Claim**

Finally, NetPlanner moves for summary judgment seeking to recover from defendants under the Miller Act for the remaining balance it claims it is owed under the subcontract. According to NetPlanner, Liberty, as obligor under the bond, is jointly and severally obligated to pay NetPlanner for the materials and work for which GSC has failed to make payment. (Pl.'s Supp. Mem., DE # 13-2, at 11.)

The Miller Act provides financial protection to subcontractors for government construction projects. 40 U.S.C. §§ 3131-34. Before any contract of more than $100,000 may be awarded for a federal construction project, the Miller Act requires that a contractor post a payment bond "with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." Id. The Miller Act also allows an unpaid subcontractor to file suit seeking payment from a surety on a payment

bond when the subcontractor has not been paid by the general contractor within 90 days of completing the subcontractor's work. Id. A plaintiff must prove four elements to collect under the Miller Act: (1) labor or materials were supplied for work in the contract; (2) the supplier of that labor or materials is unpaid; (3) the supplier had a good faith belief that the labor or materials were for the specified work; and (4) jurisdictional requisites are met. United States ex rel. ProBuild Co., LLC v. Scarborough, No. 2:11CV451, 2012 WL 1571500, at *5 (E.D. Va. Apr. 11, 2012) (quoting 40 U.S.C. § 3133(b)(1)), *adopted*, 2012 WL 1571493 (E.D. Va. May 3, 2012).

Defendants argue that NetPlanner cannot recover payment under the Miller Act bond for work that was not timely performed and that violated terms of the subcontract. (Defs.' Resp., DE # 27, at 4.) "Whether a subcontractor has been paid in full for providing labor and materials must be determined by reference to the underlying subcontract as it relates to the scope of the work and the payment terms." United States ex rel. Acoustical Concepts, Inc. v. Travelers Cas. and Sur. Co. of Am., 635 F. Supp. 2d 434, 438 (E.D. Va. 2009). Pursuant to the terms of the subcontract, NetPlanner agreed to complete its work within the government-approved schedule. (Ex. 5, DE # 13-7, at 9.) The subcontract also states that "[f]inal payment, constituting the entire unpaid balance of the Subcontract Sum," shall be made when "the Subcontractor's Work is fully performed in accordance with the requirements of the Contract Documents." (Id. at 12.) As noted previously, a genuine factual dispute exists as to whether NetPlanner substantially completed the work under the subcontract in a timely manner. See Empire Enters. JKB, Inc. v. Union City Contractors, Inc., 660 F. Supp. 2d 492 (W.D.N.Y. 2009) (noting that a successful Miller Act "plaintiff must show that it complied with its contractual obligations under the

subcontract"). Therefore, NetPlanner has not carried its burden of showing there are no disputed issues of material facts which would entitle it to judgment as a matter of law as to this claim.

### III. CONCLUSION

For the foregoing reasons, NetPlanner's motion for summary judgment, (DE # 13), is DENIED. The matter is set for bench trial on 27 November 2017.

This 21 August 2017.

_____
W. Earl Britt
Senior U.S. District Judge